# Frank L. Shernoff
Attorney at Law

200 Central Park South, 28B  Shernoff@live.com
New York, NY 10019  Phone: 212-837-2246

November 10, 2014

Eric N. Vitaliano, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:  In Re Hurricane Sandy Cases (14 MC 41)
     This Document Applies To:  Kerns Manufacturing Corp. and Premier Atlantic Properties, LLC v. Hartford Insurance Company of the Midwest
     Docket No. CV 14-6105

Honorable Sir:

This office represents the plaintiffs in this newly-commenced action at law. I write pursuant to Section III(B) of Case Management Order #1, which provides that:

> Counsel for defendants have identified several state law claims common to many of plaintiffs' cases, which defendants contend should be dismissed, including, *inter alia*, state law claims alleging bad faith or negligent claims handling, certain forms of relief, such as punitive damages, treble damages, and/or attorneys' fees, and requests for jury trial. A number of district judges have already dismissed such claims, finding that the allegations are not viable under New York law. See, e.g., Funk v. Allstate Ins. Co., No. 13 CV 5933 (JS) (GRB) (E.D.N.Y. Dec. 13, 2013); Dufficy v. Nationwide Mut. Fire Ins. Co., No. 13 CV 6010 (SJF) (AKT) (E.D.N.Y. Dec. 2, 2013).
>
> Rather than require each judge to resolve motions to dismiss such claims, plaintiffs are ORDERED within 14 days of the Order to voluntarily withdraw such claims, or if not, submit a letter to the assigned judge, explaining the legal basis for continuing to pursue such claims in any particular action.

Although not intended to brief the issue, this letter complies with the Court's Order to explain the legal basis for the plaintiffs' continuation of their claims for public nuisance, private nuisance, and bad-faith damages. Although this case had its genesis in the defendant's breach of an insurance contract, the tort claims and bad-faith damages demanded are expressly contemplated by New York law as expressed by the Court of Appeals and other persuasive authority.

From: Frank Shernoff, Esq.
To: Hon. Eric N. Vitaliano, U.S.D.J.
Date: November 10, 2014
Page Page 2 of 6

### Procedural Status of This Case

This case was filed on October 17, 2014 and was designated a Hurricane Sandy Case on October 20th. On that date, I sent the Summons and Complaint to the New York State Department of Financial Services, whose Return of Service indicates that it mailed process to the defendant on October 22nd. I have no knowledge as to when the defendant received the Summons and Complaint.

With my consent, Rivkin & Radler has moved to extend the defendant's time to answer until November 25th. The motion, however, fails to note that my consent was given in consideration of our additional agreement regarding this very letter. More specifically, since Case Management Order #1 does not make clear the due date for this letter, adverse counsel and I further agreed that such would be timely if filed on or before Tuesday, November 11th. My request to Rivkin & Radler, that it correct the record to reflect the entirety of our agreement, was denied.

### Facts Related to All Claims

The plaintiffs' Complaint asserts three causes of action: for public nuisance, private nuisance, and breach of contract. In addition to contract damages, the plaintiffs seek bad-faith, punitive, and/or exemplary damages. The facts applicable to all three claims may be summarized as follows:

The plaintiffs, Kerns Manufacturing Corp. ("Kerns") and Premier Atlantic Properties, LLC ("Atlantic")  are corporate affiliates. Both were insured against storm damage under a single insurance policy issued by the defendant, The Hartford Insurance Company of the Midwest ("the

Hartford"). In consideration of the policy issued by the Hartford, the plaintiffs or their affiliates paid premiums totaling approximately $82,000.

A building owned by Atlantic, together with personalty stored on the premises by Kerns, were damaged by the wind and rain that accompanied Hurricane Sandy, and the plaintiffs presented eight categories of damage to the Hartford for coverage. These included claims for window damage, masonry damage, ductwork damage, damage to tooling and inventory, damage to overhead cranes, damage to a truck scale / platform leveler, destruction of a bathroom, and cleanup costs.

The damage to the window and masonry claims alone exceeds one million five hundred thousand dollars. Of this amount, the Hartford has paid to the plaintiffs the absurd sum of about five thousand dollars, i.e., less than four one-thousandths of a percent.

### Facts Related to the Tort Claims

Of the eight categories of storm damage previously described, three have, since the date of the hurricane, presented an imminent risk of injury or death not only to the plaintiffs, but to the general public as well. More specifically:

1. <u>The Masonry Claim</u>: Hurricane Sandy caused a four-story brick wall to separate from the vertical steel beams that support it. The wall has been leaning since the storm, and it is at risk of collapse.

2. <u>The Windows Claim</u>: The hurricane dislodged and displaced huge, steel-framed window units. Each one of these window "carriers" is set into the surrounding masonry, and each one holds as many as 72 individual panes of glass. Hurricane Sandy caused several of these huge, "carrier" units to loosen or completely separate from the surrounding masonry. One of them has already collapsed into the building. Others are poised to collapse into the building or onto the properties outside.

From: Frank Shernoff, Esq.
To: Hon. Eric N. Vitaliano, U.S.D.J.
Date: November 10, 2014
Page Page 4 of 6

      3.      The Ductwork Claim: Three enormous ducts extend from the side of the building. Each is three feet in diameter. By reason of the storm, they are all at risk of collapse onto the property below.

The collapse of the masonry, window carriers, or exterior ductwork may injure or kill not only the plaintiffs' employees or invitees inside the building, but members of the general public lawfully on public and private property outside of the building. More specifically:

      1.      Members of the Public on Public Property: If the wall or windows collapse onto the public streets or sidewalks abutting the building, motorists and passersby are at risk of injury or death.

      2.      Members of the Public on Private Property: If the wall, windows, or ducts collapse onto the private property abutting the building, the owners of that private property, as well as their families, tenants, and/or invitees, are at risk of injury or death.

The risk to the plaintiff and the public alike is patently obvious. Accordingly, the Hartford has been repeatedly advised, in writing, that the storm-damaged condition of the premises presents a risk of injury or death to the plaintiffs and to the public. For example:

      1.      On June 25, 2013, the plaintiffs advised the Hartford that "[w]e cannot rent the building without the windows being repaired or the giant pipes that have been a **danger to the community** for over 8 months." [sic]  (Emphasis added.)

      2.      On June 25, 2013, the plaintiffs further advised the Hartford that "those pipes should have been moved day one (as) there is **much danger involved to the neighbors** if they are not." (Emphasis added.)

      3.      On July 19, 2013, I personally advised the Hartford that "I am compelled to open with **your placement of the general public at risk of serious injury**." (Emphasis added.)

      4.      On July 19, 2013, I demanded the Hartford's claim file, together with "such materials as support **your refusal to fund the removal of a public nuisance** caused by the hurricane. (Emphasis added.) My demand was denied by the insurer.

> 5. On July 24, 2013, I advised the Hartford that **a "public hazard exists" at the Premises**. (Emphasis added.)

Although the Hartford wrote that "[e]very effort will be made to protect your interest while we are verifying the coverage for this loss," that commitment was a lie. <u>At no time</u> during their two-year-long verification of coverage and purported adjustment of the loss did the Hartford do anything to abate or fund the abatement of the still-persisting public and private nuisance at the property.

The Hartford placed its own interests ahead of those of the insured and the general public, and it suffered a nuisance to exist at the insured premises, during its two-year-long investigation and adjustment period. The Hartford further suffered a nuisance to exist at the Premises, to the risk of the plaintiffs and the public alike, when it denied a request for a policy advance requested for the purpose of abating a hazard for which insurance premiums had been paid. And the Hartford suffered a nuisance to exist - and it continues to suffer a nuisance to exist - by having refused to fund repairs while requesting - as recently as last month - yet another site inspection.

### Tort Claims and Demands for Bad-Faith Damages are Expressly Contemplated by New York Law <u>Under the Facts Articulated Above</u>

Since Case Management Order #1 requests a letter, not a brief; and since the defendant has not yet articulated a reason why the plaintiffs' claims may not proceed unabated, it should suffice to state, at this juncture, that under New York law:

- A person is not necessarily insulated from liability in tort merely because he or she is engaged in performing a contractual obligation

From: Frank Shernoff, Esq.
To: Hon. Eric N. Vitaliano, U.S.D.J.
Date: November 10, 2014
Page Page 6 of 6

- A legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship.

- In these circumstances, the nature of a contract, and the public interest in seeing it performed with reasonable care, gives rise to a duty of reasonable care in performance of the contract, and the breach of that independent duty will give rise to a tort claim.

- In these instances, it is public policy, not the parties' contract, that gives rise to a duty of due care.

- In these circumstances, the purpose of the extra-contractual duty is to protect people and property from physical harm. And as of the date hereof, the plaintiffs and the public alike remain, by reason of the Hartford's acts or omissions, at risk of injury or death.

- The threshold task for a court considering a defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract. Two torts, viz, public and private nuisance, have been clearly established in this case.

- It is not for the Court to say whether the acts or omissions of the Hartford were sufficient to constitute reasonable care. That is an issue for the jury.

## Conclusion

Despite the fact that these claims had their genesis in contract, the plaintiffs have so clearly identified a duty sounding in tort, in the manner contemplated by New York law, that a motion to dismiss will be treated as frivolous.

I am at the service of the Court if further facts, specific citations, or an evidentiary showing should be required at this time.

Yours sincerely,

Frank Shernoff

cc: Brian Bank, Esq.