Frank Shernoff (FS 9358)
*Attorney for Plaintiffs*
200 Central Park South, Ste. 28B
New York, NY 10019

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

Kerns Manufacturing Corp. and Premier Atlantic
Properties, LLC,

                              Plaintiffs,

                    v.

The Hartford Insurance Company of the Midwest

                              Defendant.

**FIRST AMENDED COMPLAINT**

Civil Action No. 14-6105(ENV)(CLP)

TRIAL BY JURY DEMANDED

The Plaintiffs, Kerns Manufacturing Corp. and Premier Atlantic Properties,

LLC, by their attorney and for their Complaint against Hartford Insurance Company

of the Midwest, alleges as follows:

### The Parties

1.     The plaintiff, Kerns Manufacturing Corp. ("Kerns"), is a New York

corporation having its principal place of business at 37-14 29th Street, Long Island

City, NY 11101.

pg. 1

2.      The plaintiff, Premier Atlantic Properties, LLC ("Atlantic"), is a New York limited liability company having its principal place of business at 140 53rd Street, Brooklyn, NY 11232.

3.      The plaintiffs are corporate affiliates, under common ownership.

4.      The defendant, the Hartford Insurance Company of the Midwest ("the Hartford") is an Indiana corporation licensed to transact business in the State of New York. Its statutory address is 501 Pennsylvania Parkway, Suite 400, Indianapolis, IN 46280-0014 and its principal place of business is at One Hartford Plaza, Hartford, CT 06155.

## Jurisdiction and Venue

5.      The United States District Court has original jurisdiction pursuant to 28 USCS §1332 in that the matter in controversy exceeds $75,000 exclusive of interest and costs and is between citizens of this state and the subject of a foreign state.

6.      Venue is properly laid in the Eastern District pursuant to 28 USCS §1391(a) and (d) in that the defendant is a foreign corporation; a substantial part of the events giving rise to the claim occurred in this district; and the property that is the subject of this action is situated in this district.

## Nature of the Case

7.      This is a civil action for breach of contract and nuisance.

## Facts Related to All Claims

8.      The plaintiffs, Kerns and Atlantic, are corporate affiliates.

9.      Atlantic owns the building at 1260 Atlantic Avenue, Brooklyn, NY

(the "Premises").

10.     Kerns manufactures aerospace products in Long Island City.

11.     The Premises consist of an industrial warehouse of nearly 100,000

square feet, equipped with overhead rolling cranes, a truck scale, and other

industrial appurtenances.

12.     A portion of the Premises are used for the storage, staging, and

processing of Kerns' raw materials, tooling, and products.

13.     On or about October 29, 2012, the Premises, together with the

plaintiffs' personal property at the Premises, were damaged by Hurricane Sandy

(the "Loss").

14.     On the date of Loss, the Premises and its contents were insured against

storm damage under Special Multi-Flex Insurance Policy No. 12 UUN PM0800 DB

issued by the defendant (the "Policy").

15.     In consideration of the policy and the insurance coverage contractually provided thereby, the plaintiffs or their affiliates paid premiums to the Hartford, for the policy year in which this claim arose, totaling approximately $82,000.

16.     The Plaintiffs are named insureds under the Policy.

17.     The Premises were insured under the Policy.

18.     The Loss was an insured event under the Policy.

19.     The Loss was reported to the Hartford in timely fashion.

20.     The Plaintiffs fully performed their obligations under the Policy.

21.     The Plaintiffs furnished all instruments or documents requested or demanded by the Hartford.

22.     The total amount of the claim is approximately $2,000,000.

23.     The policy proceeds paid by the Hartford to the plaintiffs is $5,268.

## Facts Related to
## the Nuisance Claim

24.     The plaintiffs repeatedly placed the Hartford on notice that the storm-damaged condition of the insured Premises presented and continues to present a risk of personal injury or death to the plaintiffs' agents, employees, and invitees inside the Premises; to the general public in public spaces outside of the

Premises; and to specific members of the public on private property abutting the

Premises. Most notably:

    a.    The insured advised the defendant that "the giant pipes … have been a danger to the community for over 8 months."

    b.    The insured advised the defendant that "those pipes should have been moved day one (as) there is much danger involved to the neighbors if they are not."

    c.    The insured advised the defendant that  has placed "the general public at risk of serious injury."

    d.    The insured demanded that the insurer produce "such materials as support your refusal to fund the removal of a public nuisance ..."

    e.    The insured advised the defendant that  a "public hazard exists" at the Premises.

25.    Despite the defendant's written commitment that "[e]very effort will be made to protect your interest while we are verifying the coverage for this loss", the Hartford refused to provide a policy advance to abate a hazardous condition at the Premises.

26.    The Hartford suffered a nuisance to exist at the Premises when it denied the plaintiff's request for a policy advance for the purpose of abating a dangerous condition as aforesaid while processing the claim.

27.    Thereafter, the Hartford placed its own interests ahead of those of its insured and the public, and it suffered and continues to suffer a nuisance to persist at the Premises, by denying the plaintiffs' claims for those items of storm damage that placed the plaintiffs and the public at risk of personal injury and death.

28.    The claim items that presented and continue to present a risk of injury or death to the insured and the public include the following:

    a.    <u>The Masonry Claim</u>: Hurricane Sandy caused a four-story brick wall to separate from the vertical steel beams that support it. The wall has been leaning since the storm, and it is at risk of collapse.

    b.    <u>The Windows Claim</u>: The hurricane dislodged and displaced huge, steel-framed window units. Each one of these window "carriers" is set into the surrounding masonry, and each one holds as many as 72 individual panes of glass. Hurricane Sandy caused several of these huge, "carrier" units to loosen or completely separate from the surrounding masonry. One of them has already collapsed into the building. Others are poised to collapse into the building or onto the properties outside.

    c.    <u>The Ductwork Claim</u>: Three enormous ducts extend from the side of the building. Each is three feet in diameter. By reason of the storm, they are all at risk of collapse onto the property below.

29.    By reason of the Hartford's failure and refusal to fund the remediation, repair, or replacement of the windows, masonry, and ductwork, the plaintiffs and the public remain at risk of injury or death.

## As And For A First Cause of Action
### For Breach of Contract

30.     The defendants issued to the plaintiffs Special Multi-Flex Insurance

Policy No. 12 UUN PM0800 DB (the "Policy").

31.     In consideration of the policy and the insurance coverage contractually

provided thereby, the plaintiffs or their affiliates paid premiums to the Hartford, for

the policy year in which this claim arose, totaling approximately $82,000.

32.     The Plaintiffs are named insureds under the Policy.

33.     The Premises were insured under the Policy.

34.     The Loss was an insured event under the Policy.

35.     The Loss was reported to the Hartford in timely fashion.

36.     The Plaintiffs fully performed their obligations under the Policy.

37.     The Plaintiffs furnished all instruments or documents requested or

demanded by the Hartford.

38.     Following hurricane Sandy and following presentation of the

plaintiffs' claims to the defendant, the defendant undertook, pursuant to the terms of

the Policy, to make "[e]very effort" to protect the plaintiffs' "interest(s) while …

verifying the coverage for this loss … "

39.     The defendants then failed to make any effort whatsoever to protect the plaintiffs' interests while verifying the coverage for the Loss.

40.     The categories of damage caused by the hurricane and presented to the Hartford for coverage under the Policy included the following:

        a.    Window damage (also gives rise to the nuisance claims)
        b.    Masonry damage (also gives rise to the nuisance claims)
        c.    Ductwork damage (also gives rise to the nuisance claims)
        d.    Roof damage
        e.    Damage to tooling and inventory
        f.    Damage to overhead cranes
        g.    Damage to a truck scale / platform leveler
        h.    Destruction of a bathroom
        i.    Cleanup costs

41.     The aforesaid components of the claim have not been fully or fairly adjusted or paid by the Hartford.

42.     The value of the damages is approximately two million dollars ($2,000,000).

43.     In response, the defendant paid to the plaintiff, Atlantic, just over five thousand dollars (more specifically, $5,268).

44.     Having accepted the policy Premium, and having undertaken to protect the plaintiffs' interests, the defendant then breached their contract with the plaintiffs by failing or refusing to reasonably evaluate, adjust, and pay the plaintiffs' claims.

45.     Further, the defendants breached their duty of good faith and fair dealing, and violated the New York Unfair Claims Settlement Practices Act, by their intentional failure or refusal to adjust the loss in good faith.

46.     The defendant's breaches of contract include, but are not necessarily limited to the following:

a.     The defendant failed to fully and fairly adjust and pay the plaintiffs' claims for hurricane damage;

b.     The defendant wrote that "every effort" will be made to protect the your interest, then it failed or refused to take any action whatsoever to protect the insured's interests.

c.     The defendant wholly failed to adjust or pay the overhead door claim;

d.     The defendant wholly failed to adjust or pay the destroyed bathroom claim;

e.     The defendant wholly failed to adjust or pay the truck-scale claim;

f.     The defendant wholly failed to adjust or pay the overhead cranes claim;

g.     The defendant wholly failed to adjust or pay the interior cleanup claim;

h.     The defendant wholly failed to adjust or pay the inventory claim;

i.     The defendant ignored, or may have actually withheld from its engineers, evidence favoring payment of the Masonry Claim;

j.     The defendant ignored evidence favoring payment of the Windows Claim;

k.     The defendant refused the plaintiffs request to inspect of those portions of the insurer's claim file upon which it based its disclaimer of coverage, even after being advised by an attorney that those files are subject to disclosure under New York law;

l.     The defendant demanded an unreasonable number of inspections under threat of disclaimer;

m.     The defendant refused to furnish plaintiff's counsel with the names and dates of each Hartford inspection of the Premises and the results of those inspections;

n.     The defendant refused to provide a policy advance as reasonably requested by the insured;

o.     The defendant employed adjusters who practiced insurer-biased adjustment practices; who wrote that depreciation was applied to the replacement of storm-damaged windows only "per carrier request"; and who noted that actual cash value for the claim was twice the amount allowed by the Hartford;

p.     The defendant applied excessive and unreasonable depreciation to the Window Claim, and failed, thereafter, to remit the balance of the claim to the plaintiffs;

q.     The defendant paid only half the ACV recommended by its adjuster(s), and then only subject to 85% depreciation;

r.     The defendant evaluated the plaintiff's damages pursuant to the estimates of its own adjusters, rather than upon the estimates of independent contractors;

pg. 10

s.      The defendant offered to pay for individual panes of glass although no contractor would replace those panes while leaving loosened, steel frames, holding as many as 72 such panes, in place and at risk of collapse;

t.      The defendant falsely blamed the plaintiffs for the Hartford's failure to promptly adjust the loss;

u.      The defendant claimed that its adjuster resigned from the case under false pretenses;

v.      The defendant alleged untimely notice, but then refused o provide, upon written request, the dates upon which the insured reported the windows claim, the overhead garage door claim, the cracked wall claim, the masonry/parapet claim, the exterior duct claim, the roof claim, the salvageable inventory claim, the unsalvageable inventory claim, the damaged fixtures claim, and/or the interior cleanup claim;

w.      The defendant lied to its own engineering consultant in an effort to gain untimely access to the premises;

x.      The defendant assigned adjusters not qualified to evaluate the loss;

y.      The defendant relied upon gossip and hearsay as grounds for withholding policy benefits;

z.      The defendant failed or refused to communicate with the plaintiff in good faith;

aa.     The defendant falsely advised its insured that the claims were time barred;

bb.     The defendant threatened to disclaim coverage for the failure to submit a proof of loss although none was ever requested by the Hartford;

    cc.    The defendant falsely told the insured that it had the "absolute right" to an engineering inspection, despite repeated prior site inspections by the Hartford's agents;

    dd.    The defendant attempted to run-out the plaintiffs' statute of limitations by requesting a third engineering inspection just a month before the two-year anniversary of the hurricane.

47.    By reason of the foregoing, the plaintiffs demand contract damages in the sum of two million dollars ($2,000,000) or such greater amount as may be demonstrated or required by the evidence adduced at trial.

**As And For A Second Cause of Action**
**For Private Nuisance**

48.    If following discovery and trial it is determined that the insurer is liable in contract for remediation of the Windows, Masonry, and/or Ductwork Claims (*see* paragraph 28, above), an award on the contract will be insufficient to hold the plaintiffs harmless against intervening claims for personal injury or death should the windows, walls, or ductwork collapse upon the plaintiffs' invitees prior to the close of the contract case.

49.    Since the insurer's breach of contract exposes the plaintiffs to premises liability, i.e., liability sounding in tort, for personal injury or death to their invitees, the defendant's acts or omissions violate a legal duty independent of the insurance

contract and, as a result, this second cause of action for private nuisance is not duplicative of the plaintiffs' claim for breach of contract.

50.    Therefore, as and for their second cause of action for private nuisance, the plaintiffs allege as follows:

51.    The plaintiff, Atlantic, owns the Premises.

52.    The plaintiff, Kerns, keeps raw materials, inventory, and work-in-process, at the Premises.

53.    The plaintiffs purchased insurance from the defendants for, among other purposes, remedying a nuisance at the Premises caused by a hurricane.

54.    During the policy year in which hurricane Sandy occurred, the plaintiffs and/or their affiliates paid, to the defendant, approximately $82,000 (the "Policy Premium") for the purpose of assuring that a nuisance caused by a natural disaster, such as hurricane Sandy, would be abated by their insurer.

55.    The plaintiffs' expectations of insurance coverage included the possibility that a natural disaster, such as hurricane Sandy, might render the Premises dangerous to the plaintiffs and their invitees, and that the cost of abating the danger would be more prohibitive than the cost of the insurance premiums.

56.     The plaintiffs and/or their affiliates paid the Policy Premium to the defendant knowing that absent such insurance, they might not be able to remedy a nuisance on the premises such as now exists by reason of hurricane Sandy.

57.     The defendant's interference in the plaintiffs' expectation of insurance coverage for the remediation of the nuisance caused by hurricane Sandy is substantial.

58.     The defendant's interference in the plaintiffs' ability to remedy the nuisance caused by hurricane Sandy is substantial.

59.     The negligent or intentional misconduct giving rise to this tort claim includes, but is not necessarily limited to, the following:

    a.     Although independent contractors estimate the windows, masonry, and ductwork claims at more than one-and-a-half million dollars, the defendants paid only $5,268 to the plaintiffs, virtually assuring that the public will remain at risk of injury or death.

    b.     The defendant wrote that "every effort" will be made to protect the insured's interest, then it failed or refused to take any action whatsoever to protect the insured's interests.

    c.     The defendant ignored, or may have actually withheld from its engineers, evidence favoring payment of the Masonry Claim;

    d.     The defendant ignored evidence favoring payment of the Windows Claim;

e.  The defendant refused to provide a policy advance as requested by the insured for the express purpose of remedying a private nuisance;

f.  The defendant offered to pay for individual panes of glass although no contractor would replace those panes while leaving loosened, steel frames, holding as many as 72 such panes, in place and at risk of collapse;

60.   The financial harm caused to the plaintiffs by reason of the Hartford's refusal to remedy the nuisance during the defendant's processing of the Windows, Masonry, and Ductwork Claims claim was substantial.

61.   The financial harm caused to the plaintiffs by reason of the Hartford's ultimate denial of the Windows, Masonry, and Ductwork Claims is substantial.

62.   The plaintiffs' financial harm as aforesaid was the result of the defendant's intentional failure or refusal to provide a policy advance.

63.   The plaintiffs' financial harm as aforesaid was the result of the defendant's *de jure* disclaimer of coverage.

64.   The defendant's refusal to provide an advance during their processing of the Windows, Masonry, and Ductwork Claims was unreasonable.

65.   The defendant's *de jure* disclaimer of coverage for the Windows, Masonry, and Ductwork Claims was unreasonable.

66.     The defendant's refusal to provide an advance during their processing of the Windows, Masonry, and Ductwork Claims interfered with the right of the plaintiff, Atlantic, to use and enjoy the Premises.

67.     The defendant's *de jure* disclaimer of coverage for the Windows, Masonry, and Ductwork Claims interfered and continues to interfere with the right of the plaintiffs to use and enjoy the Premises.

68.     The defendant's refusal to provide an advance during their processing of the Windows, Masonry, and Ductwork Claims constituted intentional and negligent misconduct.

69.     The defendant's *de jure* disclaimer of coverage for the Windows, Masonry, and Ductwork Claims constituted intentional and negligent misconduct.

70.     The defendants acts or omissions as aforesaid was intentional, unreasonable, negligent, and/or reckless.

71.     The defendants acts or omissions as aforesaid created, contributed  and continues to contribute to, maintained, and continues to maintain the private nuisance alleged herein.

72.     The defendants acts or omissions as aforesaid constituted a fraudulent scheme evincing such a high degree of moral turpitude and such wanton dishonesty as to imply a criminal indifference to the defendant's civil obligations.

73.     The nuisance alleged herein would not presently exist but for the conduct of the defendant.

74.     By reason of the foregoing, the plaintiffs demand tort damages for private nuisance in the sum of one-and-one-half million dollars ($1,500,000) or such greater amount as may be demonstrated or required by the evidence adduced at trial; together with punitive, exemplary, or bad-faith damages in the sum of four-and-one-half million dollars ($4,500,000).

## As And For A Third Cause of Action
## For Public Nuisance

75.     If following discovery and trial it is determined that the insurer is liable in contract for remediation of the Windows, Masonry, and/or Ductwork Claims (*see* paragraph 28, above), an award on the contract will be insufficient to hold the plaintiffs harmless against claims for personal injury or death should the windows, walls, or ductwork collapse upon member of the general public lawfully on the public or private properties abutting the premises.

76.     Since the insurer's breach of contract exposes the plaintiffs to premises liability, i.e., liability sounding in tort, for the personal injury or death of members of the general public, the defendant's acts or omissions violate a legal duty independent of the insurance contract itself and, as a result, this second cause of

action for public nuisance is not duplicative of the plaintiffs' claims for breach of contract or private nuisance.

77.     Therefore, as and for their third cause of action for public nuisance, the plaintiffs allege as follows:

78.     The risks of window, masonry, and ductwork collapse onto public property, including but not limited to passersby lawfully on the sidewalk outside of the Premises, pose unreasonable risks of injury or death to the public at large.

79.     The risks of Windows, masonry, and ductwork collapse onto private property abutting the Premises pose unreasonable risks of injury or death to specific members of the general public, viz, to the owners of those properties and their invitees.

80.     The defendant insurer placed its own interests ahead of those of its insured and the public, and it suffered a public nuisance to exist and persist at the Premises, when it denied the plaintiff's request for a policy advance to abate the risk of public harm while it processed the Windows, Masonry, and Ductwork Claims.

81.     The defendant placed its own interests ahead of those of its insured and the public, and it suffered and continues to suffer a nuisance to exist and persist

at the Premises, when it finally and/or ultimately denied the Windows, Masonry, and Ductwork Claims.

82.     The misconduct and/or omissions by the defendant in processing the Windows, Masonry, and Ductwork Claims, and in finally and/or ultimately failing or refusing to insure those Claims, contribute to and/or maintain the existence of the public nuisances presented by risks of window, wall, and/or ductwork collapse.

83.     The damage to the public by reason of the defendant's misconduct or omissions constitutes special or different injury beyond that suffered by the plaintiffs by reason of its insurer's breach of contract.

84.     The defendant's negligent and intentional misconduct giving rise to this third cause of action for public nuisance is evidenced by the following, fully-documented facts:

   a.     Although independent contractors estimate the windows, masonry, and ductwork claims at more than one-and-a-half million dollars, the defendants paid only $5,268 to the plaintiffs, virtually assuring that the public will remain at risk of injury or death.

   b.     After the defendant wrote that "every effort" will be made to protect the insured's interest while verifying coverage, the defendant failed to take any action whatsoever to protect the insured's interests.

c.      The defendant ignored, or may have actually withheld from its engineers, evidence favoring payment of the Masonry Claim;

d.      The defendant ignored evidence favoring payment of the Windows Claim;

e.      The defendant placed its own interests ahead of the interests of the insured and the general public by allowing (and continuing to allow) a risk of injury or death to exist both on and off the insured premises;

f.      The defendant refused to provide a policy advance as requested by the insured for the express purpose of remedying a public nuisance;

g.      The defendant offered to pay for individual panes of glass although no contractor would replace those panes while leaving loosened, steel frames, holding as many as 72 such panes, in place and at risk of collapse;

85.     The defendant's conduct as aforesaid was intentional, unreasonable, negligent, and/or reckless.

86.     The defendant's conduct as aforesaid created, contributed and continues to contribute to, maintained, and continues to maintain a public nuisance.

87.     The defendant's conduct as aforesaid above constituted a fraudulent scheme evincing such a high degree of moral turpitude and such wanton dishonesty as to imply a criminal indifference to the defendant's civil obligations.

88.     The defendant's conduct as aforesaid violated a legal duty independent of the insurance contract itself and, as a result, this third cause of action for public nuisance is not duplicative of the first cause of action for breach of contract.

89.     The defendant's acts or omissions as aforesaid offend, interfere with, or damage the public in the exercise of rights common to all, in a manner such as to offend public morals, interfere with use by the public of a public place, or endanger or injure the property, health, safety, or comfort of a considerable number of persons.

90.     The nuisance alleged herein would not exist but for the defendant's conduct as aforesaid.

91.     By reason of the foregoing, the plaintiffs demand tort damages for public nuisance in the sum of one-and-one-half million dollars ($1,500,000) or such greater amount as may be demonstrated or required by the evidence adduced at trial; together with punitive, exemplary, or bad-faith damages in the sum of four-and-one-half million dollars ($4,500,000).

## Conclusion

**WHEREFORE** the plaintiff, Kerns Manufacturing Corp., demands judgment against the defendants as follows:

92.     On the first cause of action breach of contract, two million dollars ($2,000,000) or such greater amount as may be demonstrated or required by the evidence adduced at trial;

93.     On the second cause of action for private nuisance, one-and-one-half million dollars ($1,500,000) or such greater amount as may be demonstrated or required by the evidence adduced at trial; together with punitive, exemplary, or bad-faith damages in the sum of four-and-one-half million dollars ($4,500,0000); and

94.     On the third cause of action for public nuisance, one-and-one-half million dollars ($1,500,000) or such greater amount as may be demonstrated or required by the evidence adduced at trial; together with punitive, exemplary, or bad-faith damages in the sum of four-and-one-half million dollars ($4,500,0000),

all exclusive of interest and costs, together with such other relief as this Court may

deem just and proper.

Dated:        New York, NY
              December 26, 2014

                                        Respectfully Submitted,

                                        Frank L. Shernoff (FS 9358)
                                        200 Central Park South, Ste. 28B
                                        New York, NY 10019
                                        212-837-2246